UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

ERAN FINANCIAL SERVICES, LLC, a
Florida limited liability company

    *Plaintiff*,

vs.

ERAN INDUSTRIES LTD, a Hong Kong
entity; ERAN INDUSTRIES LIMITED, a Belize
entity; NINGBO MORELUX IMPORT
EXPORT CO. LTD., a Chinese entity;
NINGBO MORELUX LIGHTING MFG. LTD.,
a Chinese entity; and NINGBO MORELUX POLE
TECHNOLOGY CO. LTD., a Chinese entity,

    *Defendants*.

_____/

## COMPLAINT

Eran Financial Services, LLC ("***EFS***") hereby sues Eran Industries LTD [Hong Kong]"("***EI***"), Eran Industries Limited [Belize] ("***EI Belize***"), Ningbo Morelux Import Export Co. Ltd., Ningbo Morelux Lighting Mfg. Ltd., Ningbo Morelux Pole Technology Co. Ltd., (the Morelux entities d/b/a "***Morelux,***" with EI, and EI Belize, the "***Defendants***") and alleges as follows:

## COMMON ALLEGATIONS

1.    Boca Raton-based EFS contracted with Defendant EI, a Chinese manufacturer, to manufacture EFS's products – primarily industrial lighting and fans. The parties' agreement explicitly prohibits EI from, directly or indirectly, soliciting EFS's customers, selling to EFS's customers or competing with EFS. Notwithstanding, EI, directly and through its alter ego

1

companies, Morelux and EI Belize, is ignoring this agreement, refusing to supply EFS and instead is openly soliciting EFS's customers for their direct business, while keeping control of EFS's unique, proprietary and expensive tooling in China. Simply put, the Defendants are engaged in a coordinated campaign to undermine EFS and steal its customers, hoping that the ocean separating the companies will shield the Defendants from any consequences for their flagrantly unlawful actions. This has caused EFS grave damage, effectively forcing its business to a screeching halt.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because this action is between citizens of a foreign state and a citizen of this state, with an amount in controversy in excess of $75,000, exclusive of interest and costs. Further, EFS and EI have expressly agreed to this Court's jurisdiction in the underlying agreement between the parties, which states that all disputes "arising out of . . . this Agreement . . . [s]hall be resolved only by State or Federal courts located in the city of Palm Beach located in the State of Florida." This Court also has jurisdiction over Morelux and EI Belize under the alter ego theory of long-arm jurisdiction, as set forth further below. Additionally, Defendants' common principal, Ye Zeng Hui ("Ye"), and at least one key employee of Defendants, Machine Qian, visited South Florida on numerous occasions to work with the EFS team in Boca Raton.

3. EFS is a Florida limited liability company with its principal place of business in Boca Raton, Florida.

4. EI and Morelux are, upon information and belief, Hong Kong entities, with their principal place of business in Ningbo, China.

5. EI Belize is, upon information and belief, a Belize entity with its principal place of business in Ningbo, China.

6. All conditions precedent to bringing this action have been performed or waived.

7. EFS retained the undersigned counsel in this action and is required to pay counsel a reasonable fee for their services.

## FACTUAL ALLEGATIONS

8. EFS is based in Boca Raton, Florida and specializes in the design, engineering, tooling, production, and financial services for lighting products, ceiling fans, and industrial components. For over 20 years EFS has worked with EI to manufacture, assemble and source products for EFS from China, which in turn EFS sells to its customers in the United States.

9. EI is in the business of sourcing, manufacturing, assembling and distributing products and components, including lighting products and components.

10. EI operates through a series of alter ego entities, including but not limited to Morelux and EI Belize.

11. Upon information and belief, EI dominates and controls Morelux and EI Belize to such an extent that their independence is non-existent. For example, upon information and belief, EI, Morelux, and EI Belize are all, beneficially owned by Ye Zeng Hui ("*Ye*"), controlled by Ye, have comingled finances, shared employees, shared office space, shared letterhead, email addresses, and more. For example, the letter Defendants sent to EFS's customers, as detailed and pictured below, was sent using a letterhead of both EI and Morelux, listing only one address, one email, and one phone number, and the body of the letter states "We EI Industries thanks you very much…" The companies operate as one and the same – all controlled by Ye.

12. Additionally, EI used Morelux and EI Belize for the fraudulent or improper purposes of stealing EFS's customers, disrupting EFS's business, soliciting and intimidating EFS's employees, and defaming EFS, which are all discussed in further detail below.

13. On July 26, 2011, EFS and EI entered into the Supply and Services Agreement (the "Agreement"), which required EI to manufacture, source and supply products for EFS. The Agreement anticipated that EFS would make periodic orders, and it set forth a procedure for EI to process such orders. A true and correct copy of the Agreement is attached as **Exhibit A**.

14. The Agreement was to continue through December 31, 2021 ("***Term***"). Under section 8.1 of the Agreement, EI agreed, *inter alia,* not to compete with EFS, not to solicit EFS's customers, and not to sell to EFS's customers during the Term of the Agreement and for a period of 24 months thereafter:

> 8.1 Non-Competition. The Manufacturer agrees that it shall not, whether or not for compensation, directly or indirectly, individually or as an officer, director, shareholder, trustee, employee, consultant, advisor, partner, proprietor or otherwise, for a period commencing on the date hereof and ending 24 months after the end of the Term (the "**Restricted Period**"), without the prior written approval of the Purchaser (which approval may be withheld or delayed for any reason or for no reason) (1) other than pursuant to **Section 2** (i) participate or engage in the soliciting, or endeavoring to entice away, or sell any Products to, any person or entity who was a customer or client of the Purchaser at any time during the previous twelve months, or encouraging any such person or entity to use any Products which compete with the Purchaser's products; or (ii) assist any person or entity in any way to do, or attempt to do, anything prohibited by clause (i) above or (2) other than as permitted by **Section 2**, interfere with or harm the contractual or business relationships with any person or entity who was a vendor, supplier, customer, client, licensor, licensee or independent contractor of the Purchaser at any time during the previous twelve months or (3) sell (other than pursuant to **Section 2**) any Products. Additionally, the parties hereto may, from time to time, by separate agreement in writing, permit the sale to certain specific customers.

15. Because EFS trusted EI with confidential information about EFS's customers, along with EFS's proprietary tooling, and more—effectively entrusting EI with the Chinese side of EFS's business—EFS required EI to sign broad restrictive covenants found in the underlying Agreement. Absent these restrictive covenants, EFS would never have done business with EI.

16. When Defendants became concerned that EFS was planning on expanding its manufacturing to include facilities in countries outside of China, Defendants began a campaign to destroy EFS's business by contacting EFS's customers, making false statements about EFS,

soliciting EFS's customers for the sale of identical products, and soliciting and intimidating EFS's employees all while holding EFS's proprietary tooling hostage and preventing any of EI's sub-suppliers from providing EFS with any of its products.

17. More specifically, on April 25, 2021, Defendants sent each of EFS's customers an identical letter, seeking to sell them EFS's products "directly" while explicitly cutting out EFS. Below is one of the April 25, 2021 letters sent by Defendants:



**Eran Industries Limited.**
17F Guangbo Mansion, 1357 Yinxian Avenue,
Yinzhou District, Ningbo, China, 315000
Tel: 86-574-87715000, Email: info@eran-industries.com

Dear Ryan,                                                     April 25th, 2021

We Eran Industries Ltd (EI) thank you very much for your continuous business support with Eran Group in the past several years, and EI is really enjoying working with you guys.

Due to the fact that EFS' current financial status can not support any of the on-going projects and current received orders with EI, especially many old bills can not be paid to EI, EI is quite regret to inform you that EI will separate from Eran Group starting from May 1st, 2021, and that EI will be not able to proceed any of the open POs which your company placed through Eran Financial Services to EI.

In order to have the open orders to be produced and shipped smoothly and not effect your operation and business, please keep in touch with below EI contacts for detailed arrangement & solution. EI will do the best to solve the transfer from EFS to EI ASAP.

**Operation Specialist:**
Name: Rossum Yan
Email: rossum.yan@eran-industries.com
Cellphone: 86-189-698-18865

**Sales Manager:**
Name: Machine Qian
Email: machine.tsian@eran-industries.com
Cellphone: 86-189-574-13189

EI team is looking forward to doing **DIRECT** business with your company, and EI will offer best price, quality and service to you. Hopefully, EI will receive your continuous support during the coming days, and any of your new coming inquiries & orders will be highly appreciated.

We value your business very much and thanks again for your business and appreciate your understanding.

Best Regards,

**Ye Zeng Hui**
*General Manager*

18. The letter – sent by Ye on combined Morelux and EI letterhead – falsely states that "EFS's current financial status cannot support any of the on-going projects." And, in a brazen violation of section 8.1 of the Agreement, Defendants admit:

- "EI team is looking forward to doing **DIRECT** business with your company, and EI will offer best price, quality and service to you." (Emphasis in original)

A copy of Defendants' April 25, 2021 letters to EFS's customers, of which EFS has received copies, are attached as **Composite Exhibit B**.

19. Defendants' statements regarding EFS's financial status are false and defamatory, and tortiously interfere with EFS's business relationships.

20. Defendants' solicitation of direct business with EFS's customers violates their non-solicitation obligations under section 8.1 of the Agreement.

21. As part of their solicitation of business with EFS's customers, Defendants have issued and distributed a 2021 Catalog under the Morelux brand name offering EFS's products for sale to EFS's customers, replete with EFS's model numbers. A copy of the 2021 Morelux brochure is attached as **Exhibit C**.

22. Additionally, Section 3 of the Agreement clearly states that "All Products to be sold to [EFS] by Manufacturer shall be sold for one hundred and ten percent (110%) of the Manufacturer's total cost, unless otherwise agreed in writing."

23. Upon information and belief, Defendants have been deliberately and grossly overcharging EFS for its products under the Agreement, and obfuscating the numbers by continually refusing to provide records or accounting of its costs despite Defendants' obligation to permit EFS to inspect its books and records under section 7.2 of the Agreement.

## **COUNT I- BREACH OF CONTRACT**

24. EFS realleges and incorporates by reference the allegations of paragraphs 1 through 24 above as though fully set forth herein.

25. On July 26, 2011, EFS and EI entered the Agreement, which requires EI, *inter alia*, to source and manufacture certain products for EFS, and bars EI from competing with EFS or soliciting its customers during the Term of the Agreement and for 24 months thereafter.

26. EI operated through a series of alter ego entities, Morelux and EI Belize, which it completely dominated and controlled, and which EI used in an attempt to improperly circumvent EI's obligations under the Agreement, and cause damages to EFS.

27. EI, acting directly and through its alter egos Morelux and EI Belize, materially breached the Agreement by, *inter alia*, soliciting EFS's customers by sending correspondence to EFS's customers, seeking to cut out EFS and sell EFS's products directly to EFS's customers – during the term of the Agreement. *See* Ex. B.

28. Because of the Defendants' breaches of the Agreement, EFS is suffering grave injury to its business, business relationships, contractual relationships, and reputation. In fact, because Defendants control a significant portion of EFS's supply chain, including but not limited to the relationships with Chinese sub-suppliers who manufacture necessary components for EFS's products, as well as having physical possession of EFS's proprietary tooling that is required to manufacture many of EFS's products, Defendants' conduct is causing EFS catastrophic damages. More specifically, by refusing to provide products ordered by EFS's customers to EFS, while holding the proprietary tooling required to make EFS's products, it is effectively impossible for EFS to manufacture its own products elsewhere in a timely fashion to satisfy the outstanding orders from its customers.

29. Section 8.2 of the Agreement allows for specific performance and for the accounting of all profits earned by Defendants' breach of the Agreement's non-competition and non-solicitation provision:

> 8.2 Breach; Injunctive Relief. If the Manufacturer commits a breach, or threatens to commit a breach, of any of the provisions of **Section 8.1**, the Purchaser shall have the following rights and remedies, each of which shall be independent of the others and shall be severally enforceable, and all of such rights and remedies shall be in addition to, and not in lieu of, any other rights and remedies available to the Purchaser under law or in equity:
>
> (a) Specific Performance. The right and remedy to have such provisions of this **Section 8** specifically enforced by any court having equity jurisdiction, it being acknowledged and agreed that any such breach or threatened breach will cause irreparable injury to the Purchaser and that money damages will not provide an adequate remedy at law; and in connection therewith the right to obtain, without notice to the Manufacturer and without the need to post any bond, a temporary restraining order, an injunction and any other equitable relief. Such right of injunctive relief shall be cumulative and in addition to whatever other remedies the Purchaser may have at law or in equity, including the right of the Purchaser to recover from the Manufacturer as set forth in subparagraph (b) below; and
>
> (b) Accounting. The right and remedy to require the Manufacturer to account for and pay over to the Purchaser all compensation, profits, monies, accruals, increments or other benefits (collectively "**Benefits**") derived or received by it as the result of any transactions constituting a breach of any of the provisions of **Section 8.1**, and the Manufacturer hereby agrees to account for and pay over such Benefits to the Purchaser.

*See* Ex. A at ¶ 8.2.

30. The Court's enforcement of the restrictive covenant in the Agreement would protect EFS's legitimate business interests, including but not limited to its substantial relationships with specific existing customers, customer goodwill associated with lighting fixtures and related products, as well as EFS's valuable confidential business information.

31. The contractually specified period of restraint – the time of the contract and twenty-four (24) months thereafter – is reasonably necessary to protect the afore-stated legitimate business interests. In fact, Defendants' conduct commenced *during* the term of the Agreement.

32. Additionally, Section 3 of the Agreement clearly states that "All Products to be sold to [EFS] by Manufacturer shall be sold for one hundred and ten percent (110%) of the Manufacturer's total cost, unless otherwise agreed in writing."

33. Upon information and belief, Defendant EI has been deliberately and grossly overcharging EFS for its products under the Agreement.

34. Section 8.5 of the Agreement also expressly allows for monetary damages and injunctive relief to stop any continued breach of the Agreement.

35. EFS does not have a clear remedy at law to stop EI and Morelux's continued breaches of the Agreement, and EFS will suffer additional harm if injunctive relief is not provided.

36. EFS is entitled to recover its reasonable costs and attorneys' fees pursuant to Section 13.3 of the Agreement.

WHEREFORE, EFS respectfully requests that the Court issue a judgment against Defendants for damages to remedy prior harm, preliminary and permanent injunctive relief to prevent future harm, an accounting of all Benefits derived or received by Defendants as the result of all transactions constituting a breach of the Agreement, pre and post judgment interest, attorney's fees and costs pursuant to Sections 12.1 and 13.3 of the Agreement, and for such other relief as the Court deems just, proper, and equitable.

## COUNT II COMMON LAW UNFAIR COMPETITION

Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 24, inclusive, as though fully set forth herein.

42. EFS advertises, markets, and sells its lighting products under the *Eran Industrial* mark. The *Eran Industrial* mark is the means by which EFS's products are distinguished from those of others in the same or related fields.

43. Defendant EI's conduct as described herein, directly and through the use of it's alter ego entities EI Belize and Morelux, is deceptive or fraudulent and will likely cause consumer confusion.

44. More specifically, Defendants use of EFS's customer information, proprietary tooling, and marketing materials, without EFS's consent, and marketing EFS's lighting products, as their own, to EFS's customers unfairly competes with EFS for the exact same pool of customers.

45. Defendants' conduct, described herein, is likely to cause confusion, mistake or deception by or in the public as to the affiliation, connection, association, origin, sponsorship or approval of the goods to the detriment of Plaintiff and in violation of the common law of unfair competition.

46. Upon information and belief, Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

47. Defendants' conduct is causing Plaintiff grave damages.

WHEREFORE, Plaintiff seeks temporary and permanent injunctive relief, and damages in an amount to be proven at trial, attorneys' fees and costs, disgorgement of any and all gains, profits and advantages derived from Defendants' unlawful activities, and such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

EFS demands trial by jury on all issues so triable.

Dated: August 9th 2021.

                              Respectfully submitted,

                              MELAND BUDWICK, P.A.
                              3200 Southeast Financial Center
                              200 South Biscayne Boulevard
                              Miami, Florida 33131
                              Telephone: (305) 358-6363
                              Facsimile: (305) 358-1221

                        By: */s/Gabriel Groisman*
                              Gabriel Groisman, Esq.
                              Florida Bar No. 25644
                              ggroisman@melandbudwick.com
                              Utibe I. Ikpe, Esq.
                              Florida Bar No. 90301
                              uikpe@melandbudwick.com
                              Alexander E. Brody, Esq.
                              Florida Bar No. 1025332
                              abrody@melandbudwick.com

                              *Attorneys for EFS*