UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 21-CV-81386-BER

ERAN FINANCIAL SERVICES LLC, a Florida limited
liability company,

       Plaintiff,

vs.

ERAN INDUSTRIES LIMITED, a Belize entity; and
YE ZENG HUI, an individual,

       Defendants.[1]

_____

ERAN INDUSTRIES LIMITED, a Belize entity,

       Counter-Plaintiff/Third Party Plaintiff,

vs.

ERAN FINANCIAL SERVICES LLC; *et al.*

       Counter-Defendants/Third Party Defendants.

**SECOND AMENDED COMPLAINT**

---

[1]  In light of the Court's Order Granting Defendants' Motion to Dismiss Amended Complaint (ECF 90) pertaining to defendants Ningbo Morelux Import Export Co. Ltd., a Chinse entity, Ningbo Morelux Lighting Mfg. Ltd., a Chinese entity, and Ningbo Morelux Pole Technology Co. Ltd., a Chinese entity, those Defendants have been dropped from this Second Amended Complaint, however, Plaintiff's expressly reserves and does not waive its objections to the dismissal order and would, if permitted, seek to include these Defendants.  The naming convention for Defendant Eran Industries Limited used in this Second Amended Complaint has been revised to comply with the Court's Order Granting Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF 105.

Eran Financial Services, LLC ("EFS" or "Plaintiff") hereby sues Eran Industries Limited, a Belize entity, ("EI Belize") and Ye Zeng Hui, an individual ("Ye," together with EI Belize, "Defendants"), and alleges as follows:

## COMMON ALLEGATIONS

1.      EFS is a Boca Raton-based supplier of LED lighting, ceiling fans, electrical goods and other industrial products. EFS is a Florida limited liability company with its principal place of business in Boca Raton, Florida.

2.      For many years, EFS partnered with a manufacturing entity located in the People's Republic of China and owned, operated and managed by Defendant Ye to develop, manufacture, and source lighting, electrical and industrial products for resale in the United States.  The parties' relationship functioned with Ye and entities he controlled in the People's Republic of China manufacturing products to specifications provided by EFS and on tooling paid for by EFS, and EFS then selling those products through distribution channels EFS developed in the United States.  The parties' business profits were allocated so that Ye and his company shared profits with EFS in addition to manufacturing costs with EFS.  Ye agreed to source products to EFS at a fixed percentage over his actual manufacturing costs.

3.      Ye's business entity was initially known as Eran Industries, Ltd., a Hong Kong entity ("EI Hong Kong").  Ye formed various entities that he owned, controlled, managed, or all, to advance and support the parties' venture, including affiliates that supplied materials to EI Hong Kong for use in the manufacturing process.

4.      Over the years, EFS paid for tooling that was installed in facilities owned, controlled or utilized by Ye and that is now being utilized by EI Belize or its affiliates, to

2

manufacture products for EFS.  EFS, after conferring with US purchasers, would provide Ye specifications and designs for products to meet the requirements of EFS's US customers, and EFS paid Ye's company to acquire the necessary tooling.

5.     On July 26, 2011, the parties memorialized their relationship in a Supply and Services Agreement (the "Agreement") executed by Ye on behalf of EI Hong Kong, and by Shai Levitin on behalf of EFS.  A true and accurate copy of the Agreement is attached hereto as Exhibit 1.

6.     The Agreement provided that EI Hong Kong would manufacture, source and supply products for EFS.  The Agreement anticipated that EFS would make periodic orders, and it set forth a procedure for EI Hong Kong to process such orders using an agreed pricing methodology.

7.     In or about May 2014, Ye dissolved EI Hong Kong and formed a company in Belize called EI Belize to which he conveyed the assets and operations of EI Hong Kong.  On information and belief, Ye made this change in order to avoid taxes in the People's Republic of China. EI Belize has no manufacturing facilities in Belize.

8.     From EFS' vantage point, the transfer from EI Hong Kong to EI Belize was seamless and of no moment.  EFS was not advised of this change and continued to work with Ye's company on the exact terms.  The details of the transformation of EI Hong Kong to EI Belize were not shared with EFS and remain opaque.  The virtual identical names of the companies (the only difference being EI Belize spells out the word "Limited" in its name, while EI Hong Kong uses the abbreviation "Ltd." in its name) reflects their interlocked relationship.

3

9.      EI Belize has no presence in Belize as the base of the company's operations are all located in the People's Republic of China.  EI Belize is headquartered at 17F Guangbo Mansion, 1357 Yinxian Ave., Yinzhou District, Ningbo, the People's Republic of China 315000.  EI Hong Kong was headquartered in the same location because it is for all intents and purposes the predecessor entity to EI Belize.

10.     Pursuant to Section 13.8 of the Agreement, all "successors, heirs and assigns" of either party or bound by the terms of the Agreement. Accordingly, EI Belize is bound by the terms of the Agreement as EI Hong Kong's successor.

11.     In 2022, EI Belize announced that it was changing its name to Morelux Lighting Limited.  Attached as Exhibit 2 is a true and accurate copy of a purported "important notification" from EI Belize announcing that "Eran Industries [*i.e.*, EI Belize] will become Morelux Lighting." The announcement states that EI Belize announces a "name change to Morelux Lighting Limited. We will no longer be using Eran Industries Limited." *Id.*  The announcement attaches a "fact sheet" providing the same address in Ningbo, Yinzhou District, People's Republic of China for EI Hong Kong and EI Belize as the address for Morelux Lighting. Thus, EI Belize is now known as Morelux Lighting Limited.

12.     The Agreement explicitly prohibited EI Hong Kong, and the prohibition now fully applies to EI Belize as Ye's successor entity, from directly or indirectly, including as an officer, director, shareholder, proprietor or otherwise, from soliciting EFS's customers, selling to EFS's customers or competing with EFS.  Notwithstanding, EI Belize, directly and indirectly violated the parties' Agreement, refused to supply EFS with product and, instead, openly solicited EFS's customers for their direct business, while keeping control

4

of EFS's unique, proprietary and expensive tooling and other intellectual property, which EFS paid for, in the People's Republic of China. This was a coordinated campaign launched by Ye to jettison EFS, steal its customers, misappropriate tooling and designs jointly developed by and for EFS, while hoping that the vast ocean separating the companies, and the ongoing tension between the US and the People's Republic of China, would shield Ye and his companies from any consequences for these flagrant and unlawful actions.

13.    Moreover, because EFS worked to develop the "Eran" brand name, and because El Belize a similar name with "Eran" in the title, Ye could (and did) cause confusion with US EFS customers.  In this way, Ye, through his company, sought to profit on the strong brand name and reputation developed by EFS in the US, as well as the manufacturing facilities and tooling partially paid for by EFS, by seeking to sell products directly to customers developed by EFS, presumably believing it would be more profitable and efficient to cast off EFS and sell direct—all in breach of the parties' Agreement and the law.  The breach was conducted directly and indirectly through other entities controlled by Ye and currently operating under the Morelux Lighting name.

14.    This misconduct has caused EFS grave damage, effectively forcing its business onto life support.

15.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because this action is between citizens of a foreign state and a citizen of this state, with an amount in controversy in excess of $75,000, exclusive of interest and costs.  Further, the parties expressly agreed to this Court's jurisdiction in the Agreement between the parties, which states that all disputes "arising out of . . . this

5

Agreement . . . [s]hall be resolved only by State or Federal courts located in the city of Palm Beach located in the State of Florida."  This Court also has personal jurisdiction over EI Belize and Ye for numerous reasons as set forth below.

16.    Ye is a foreign national who lives and works in Ningbo in the People's Republic of China.

17.    EI Belize is, upon information and belief, a Belize entity with its principal place of business in Ningbo in the People's Republic of China. It is located at 17F Guangbo Mansion, 1357 Yinxian Ave., Yinzhou District, Ningbo, the People's Republic of China 315000.  EI Hong Kong is a dissolved Hong Kong limited liability company.

18.    This Court has personal jurisdiction over Ye and EI Belize pursuant to Florida's "long arm statute," section 48.193, Florida Statutes.

19.    These Defendants committed tortious acts within Florida, as described in this Complaint, which alleges claims of common law unfair competition and tortious interference *See* Fla. Stat. § 48.193(1)(a)(2).

20.    In addition, EI Belize and Ye engage in substantial and not isolated activity within Florida. Fla. Stat. § 48.193(2).

21.    EI Belize is controlled by Ye who is the majority shareholder of the entity. Ye operates both EI Belize as its CEO, Executive Director, General Manager, Majority Owner and Legal Representative.

22.    Ye has repeatedly travelled to Florida, stayed with Shai Levitin who serves as Chief Executive Officer of EFS even staying at Mr. Levitin's home, and wrongfully and tortiously solicited EFS customers in Florida and elsewhere to dissuade those customers

6

from continuing to do business with EFS and attempting to solicit those customers to give their business to Ye and his business El Belize.

23.     In addition, El Belize has submitted itself to the jurisdiction of this Court by filing its own Complaint in this jurisdiction. *See Adam v. Saenger*, 303 U.S. 59, 67-68 (1938).

24.     This Court has personal jurisdiction over Ye because he (1) committed tortious acts within Florida, as described in Counts II and III, and (2) engaged in substantial and not isolated activity within Florida, including but not limited to traveling to Florida to sell El Belize products and signing a contract with Plaintiff, a Florida company, to sell and distribute products throughout Florida. Fla. Stat. § 48.193(1)(a)(2)&(7) and subsection (2).

25.     All conditions precedent to bringing this action have been performed or waived.

26.     EFS retained the undersigned counsel in this action and is required to pay counsel a reasonable fee for their services.

## **FACTUAL ALLEGATIONS**

27.     EFS specializes in the design, engineering, tooling, production, and financing of the sales of lighting products, ceiling fans, and industrial components. For over 20 years EFS has worked with Ye and El Belize (and its predecessor in interest, El Hong Kong) to manufacture, assemble and source products for EFS from the People's Republic of China, which in turn EFS would sell to its customers in the United States. The entities' common name (*i.e.*, Eran Financial Services and Eran Industries), derived

from the name of Shai Levitin's son Eran, is testament to their long, close, and friendly relationship, now severed by Ye's greed and avarice.

28.    EI Belize is in the business of manufacturing, assembling and shipping various electrical products and components, including lighting products and components including light poles.

29.    As stated, EFS and EI Belize's predecessor in interest EI Hong Kong entered into the Agreement, which was to continue through December 31, 2021 ("Term").  Under section 8.1 of the Agreement, EI Hong Kong agreed, on behalf of itself and its successors and assigns, not to compete with EFS, not to solicit EFS's customers, not to sell to EFS's customers, and not to interfere with any business relationship with any of EFS's suppliers or contractors, whether directly or indirectly, during the Term of the Agreement and for a period of twenty-four months thereafter:

> 8.1    Non-Competition. The Manufacturer agrees that it shall not, whether or not for compensation, directly or indirectly, individually or as an officer, director, shareholder, trustee, employee, consultant, advisor, partner, proprietor or otherwise, for a period commencing on the date hereof and ending 24 months after the end of the Term (the "**Restricted Period**"), without the prior written approval of the Purchaser (which approval may be withheld or delayed for any reason or for no reason) (1) other than pursuant to **Section 2** (i) participate or engage in the soliciting, or endeavoring to entice away, or sell any Products to, any person or entity who was a customer or client of the Purchaser at any time during the previous twelve months, or encouraging any such person or entity to use any Products which compete with the Purchaser's products; or (ii) assist any person or entity in any way to do, or attempt to do, anything prohibited by clause (i) above or (2) other than as permitted by **Section 2**, interfere with or harm the contractual or business relationships with any person or entity who was a vendor, supplier, customer, client, licensor, licensee or independent contractor of the Purchaser at any time during the previous twelve months or (3) sell (other than pursuant to **Section 2**) any Products. Additionally, the parties hereto may, from time to time, by separate agreement in writing, permit the sale to certain specific customers.

30.    Because EFS trusted EI Belize with confidential information about EFS's customers, along with EFS's proprietary product design, engineering, and tooling, and

more—effectively entrusting EI Belize with the Chinese manufacturing side of EFS's business—and provided EI Belize with all of its business, EFS required these broad restrictive covenants as found in the underlying Agreement.  Absent these restrictive covenants, EFS would not have continued business with Ye, although EI Belize would nonetheless have been prohibited under the common law and Florida law from trading on confidential, proprietary and unique information from EFS.

31.    When Ye became concerned that EFS was planning on expanding its manufacturing to include facilities in countries outside of the People's Republic of China, Ye began a campaign, using EI Belize, to destroy EFS's business by contacting EFS's customers, making false statements about EFS, soliciting EFS's customers for the sale of identical products, and soliciting and intimidating EFS's employees all while holding EFS's proprietary tooling hostage and preventing any of EI Belize sub-suppliers from providing EFS with any of its products.

32.    As an example, EFS worked with Ye and EI Belize to create the concept for lighting poles.  EFS suggested that Ye create a pole "workshop" to complement lighting production.  EFS's CEO Shai Levitin travelled throughout Europe and North America to source tooling and technology for pole manufacturing that could be used in the People's Republic of China.  EFS sourced and handled this business using a consultant, John Hitsman, who assisted in developing a plan and build the technology for the unique pole business.  EFS also worked extensively and made large investments in the pole business, including but not limited to the marketing aspects to promote the new product line to a wide array of customers.  Ye promised that EFS would receive a 30% interest in the resulting entity, now known as Morelux Pole Technology Co. Ltd.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

CASE NO. 21-CV-81386-BER

("Morelux Pole") in exchange for this work and investment.  Instead, Ye never conveyed the promised equity interest in Morelux Pole to EFS.  To the contrary, he deployed the entity to steal and interfere with EFS's customers and relations.

33.    On April 25, 2021, EI Belize sent EFS customers an identical letter, seeking to sell them EFS's products "directly" while explicitly cutting out EFS.  Below is one of the April 25, 2021 letters sent by EI Belize:



## Eran Industries Limited.

17F Guangbo Mansion, 1357 Yinxian Avenue,
Yinzhou District, Ningbo, China, 315000
Tel: 86-574-87715000, Email: info@eran-industries.com

Dear Ryan,                                                                         April 25th, 2021

We Eran Industries Ltd (EI) thank you very much for your continuous business support with Eran Group in the past several years, and EI is really enjoying working with you guys.

Due to the fact that EFS' current financial status can not support any of the on-going projects and current received orders with EI, especially many old bills can not be paid to EI, EI is quite regret to inform you that EI will separate from Eran Group starting from May 1st, 2021, and that EI will be not able to proceed any of the open POs which your company placed through Eran Financial Services to EI.

In order to have the open orders to be produced and shipped smoothly and not effect your operation and business, please keep in touch with below EI contacts for detailed arrangement & solution. EI will do the best to solve the transfer from EFS to EI ASAP.

**Operation Specialist:**
Name: Rossum Yan
Email: rossum.yan@eran-industries.com
Cellphone: 86-189-698-18865

**Sales Manager:**
Name: Machine Qian
Email: machine.tsian@eran-industries.com
Cellphone: 86-189-574-13189

EI team is looking forward to doing **DIRECT** business with your company, and EI will offer best price, quality and service to you. Hopefully, EI will receive your continuous support during the coming days, and any of your new coming inquiries & orders will be highly appreciated.

We value your business very much and thanks again for your business and appreciate your understanding.

Best Regards,

**Ye Zeng Hui**
*General Manager*

10

The letter – signed by Ye – falsely states that "EFS's current financial status cannot support any of the on-going projects."  This was false and an improper attempt to scare customers away from EFS.

34.    Additionally, in a brazen violation of section 8.1 of the Agreement, Defendants stated:

> "EI team is looking forward to doing **DIRECT** business with your company, and EI will offer best price, quality and service to you." (Emphasis in original)

A copy of EI Belize's April 25, 2021 letters to EFS's customers, of which EFS has received copies, are attached as Composite Exhibit 3.  There are sure to be many more similar communications, which discovery in this case will reveal.

35.    EI Belize and Ye's statements regarding EFS's financial status are false and defamatory, and tortiously interfere with EFS's business relationships.

36.    EI Belize and Ye's solicitation of direct business with EFS's customers violates the non-solicitation obligations under section 8.1 of the Agreement.  The conduct also constitutes unfair competition.

37.    As part of the solicitation of business with EFS's customers, EI Belize has issued and distributed a 2021 Catalog under the Morelux name offering EFS's products for sale to EFS's customers, right down to utilizing EFS's model numbers.  (A copy of the Morelux 2021 catalog is attached as Exhibit 4).

38.    Additionally, Section 3 of the Agreement clearly states that "All Products to be sold to [EFS] by Manufacturer shall be sold for one hundred and ten percent (110%) of the Manufacturer's total cost, unless otherwise agreed in writing."

39.    Upon information and belief, EI Belize has been deliberately and grossly overcharging EFS for its products under the Agreement, often in excess of 20% to 35%,

11

and obfuscating the numbers by continually refusing to provide records or accounting of its costs despite EI Belize obligation to permit EFS to inspect its books and records under section 7.2 of the Agreement.

### COUNT I - BREACH OF CONTRACT
### (AGAINST MORELUX LIGHTING)

40.     EFS realleges and incorporates by reference the common allegations as though fully set forth herein.

41.     On July 26, 2011, EFS and EI Hong Kong entered the Agreement, which bars EI Hong Kong from competing with EFS or soliciting its customers during the Term of the Agreement and for 24 months thereafter.

42.     EI Hong Kong agreed that its successors in interest and assigns would be bound by the terms of the Agreement.

43.     EI Belize is the successor and assign of EI Hong Kong, which Ye dissolved in 2014.

44.     EI Belize, acting directly and indirectly through Ye and other business entities controlled by Ye, materially breached the Agreement by, *inter alia*, soliciting EFS's customers by sending correspondence to EFS's customers, seeking to cut out EFS and sell EFS's products directly to EFS's customers.

45.     Because of the EI Belize's breaches of the Agreement, EFS is suffering grave injury to its business, business relationships, contractual relationships, and reputation. In fact, because Defendants control a significant portion of EFS's supply chain, including but not limited to the relationships with other Chinese suppliers and sub-suppliers who manufacture other goods and necessary components for EFS's products, as well as having physical possession of EFS's proprietary tooling that is required to

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

manufacture many of EFS's products, El Belize's conduct is causing EFS catastrophic damages, in effect decimating EFS's supply chain. More specifically, by refusing to provide products ordered by EFS's customers to EFS, while holding the proprietary tooling required to make EFS's products, it is effectively impossible for EFS to manufacture its own products elsewhere in a timely fashion to satisfy the outstanding, as well as any future, orders from its customers.

46.    Section 8.2 of the Agreement allows for specific performance and for the accounting of all profits earned by Defendants' breach of the Agreement's non-competition and non-solicitation provision:

8.2    Breach; Injunctive Relief. If the Manufacturer commits a breach, or threatens to commit a breach, of any of the provisions of **Section 8.1**, the Purchaser shall have the following rights and remedies, each of which shall be independent of the others and shall be severally enforceable, and all of such rights and remedies shall be in addition to, and not in lieu of, any other rights and remedies available to the Purchaser under law or in equity:

(a)    Specific Performance. The right and remedy to have such provisions of this **Section 8** specifically enforced by any court having equity jurisdiction, it being acknowledged and agreed that any such breach or threatened breach will cause irreparable injury to the Purchaser and that money damages will not provide an adequate remedy at law; and in connection therewith the right to obtain, without notice to the Manufacturer and without the need to post any bond, a temporary restraining order, an injunction and any other equitable relief. Such right of injunctive relief shall be cumulative and in addition to whatever other remedies the Purchaser may have at law or in equity, including the right of the Purchaser to recover from the Manufacturer as set forth in subparagraph (b) below; and

(b)    Accounting. The right and remedy to require the Manufacturer to account for and pay over to the Purchaser all compensation, profits, monies, accruals, increments or other benefits (collectively "**Benefits**") derived or received by it as the result of any transactions constituting a breach of any of the provisions of **Section 8.1**, and the Manufacturer hereby agrees to account for and pay over such Benefits to the Purchaser.

See Ex. C ¶ 8.2.

47.     The Court's enforcement of the restrictive covenant in the Agreement would protect EFS's legitimate business interests, including but not limited to its substantial relationships with specific existing customers, customer goodwill associated with lighting fixtures and related products, as well as EFS's valuable confidential business information.

48.     The contractually specified period of restraint – the time of the contract and twenty- four (24) months thereafter – is reasonably necessary to protect the afore-stated legitimate business interests. In fact, Defendants' conduct commenced *during* the term of the Agreement.

49.     Additionally, Section 3 of the Agreement clearly states that "All Products to be sold to [EFS] by Manufacturer shall be sold for one hundred and ten percent (110%) of the Manufacturer's total cost, unless otherwise agreed in writing."

50.     Upon information and belief, EI Belize has been deliberately and grossly overcharging EFS for its products under the Agreement, which will be readily proven upon review of financial records of EI Belize and its affiliates.

51.     Section 8.5 of the Agreement also expressly allows for monetary damages and injunctive relief to stop any continued breach of the Agreement.

52.     EFS does not have a clear remedy at law to stop EI and EI Belize's continued breach of the Agreement, and EFS will suffer additional harm if injunctive relief is not provided.

53.     EFS is entitled to recover its reasonable costs and attorneys' fees pursuant to Section 13.3 of the Agreement.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

WHEREFORE, EFS respectfully requests that the Court issue a judgment against EI Belize for damages to remedy prior harm, preliminary and permanent injunctive relief to prevent future harm, an accounting of all benefits derived or received by Defendants as the result of all transactions constituting a breach of the Agreement, pre and post judgment interest, attorney's fees and costs pursuant to Sections 12.1 and 13.3 of the Agreement, and for such other relief as the Court deems just, proper, and equitable.

## COUNT II COMMON LAW UNFAIR COMPETITION
## (AGAINST ALL DEFENDANTS)

54.    Plaintiff realleges and incorporates by reference the common allegations as though fully set forth herein

55.    EFS advertises, markets, and sells its lighting products under the Eran Industrial mark. The *Eran Industrial* mark is the means by which EFS's products are distinguished from those of others in the same or related fields.

56.    Defendant EI Belize and Ye's conduct as described herein, directly and through the use of affiliated entities, is deceptive or fraudulent and will likely cause consumer confusion.

57.    EI Belize, at Ye's direction and under his supervision and control, has used EFS's customer information, pricing information, proprietary tooling, proprietary product designs, engineering, trade secrets and other intellectual property, and marketing materials, without EFS's consent, and marketing EFS's lighting products as their own to EFS's customers unfairly competes with EFS for the exact same pool of customers.

58.    EI Belize, acting directly and indirectly through Ye and its alter egos, grossly misappropriated EFS' IP and Trade Secrets.  EI Belize used highly confidential information including but not limited to EFS' customer list, price list, product engineering,

15

product designs, drawings, roadmaps, marketing assets, tooling, and more to unfairly compete with EFS.

59. EI Belize, acting directly and indirectly through Ye and its alter egos, actively attempted to solicit EFS and employees of EFS affiliates in order to better compete with EFS and gain access to additional IP and trade secrets of EFS.

60. EI Belize, acting directly and indirectly through Ye and its alter egos, engaged in a wide-ranging and pervasive campaign to convince others, including new replacement suppliers for EFS, to not sell or conduct business with EFS. On information and belief, EI Belize and Ye even went so far as to offer alternate EFS supplier's money in return for a commitment not sell to EFS.

61. On information and belief, EI Belize, acting directly and indirectly through Ye and its alter egos, stole confidential information from EFS affiliate's employees. EFS discovered employees who were sending highly confidential information directly to EI Belize. When these employees were dismissed EI Belize and Ye tortiously interred by immediately hiring these employees even though, in exchange for a severance payment, the employees signed agreements agreeing not to work for EI Belize or Ye entities. A day after paying employee severance, EI Belize and Ye immediately hired employees whom EFS has strong reason to believe were acting as spies for Ye.

62. EI Belize, acting directly and indirectly through Ye and its alter egos, on information and belief, have attempted numerous times to engage in computer espionage by trying to break into EFS' computer servers.

63. EI Belize's and Ye's conduct, described herein, is likely to cause confusion, mistake or deception by or in the public as to the affiliation, connection, association,

origin, sponsorship or approval of the goods to the detriment of Plaintiff and in violation of the common law of unfair competition.

64.    El Belize, again operating under Ye's direction and under his supervision and control, is wrongfully utilizing tooling partially or wholly paid for by EFS and partially or wholly owned by EFS to manufacture products for sale to EFS customers, without EFS's consent and over EFS's objections.

65.    Upon information and belief, El Belize and Ye's wrongful conduct is likely to continue unless restrained and enjoined.

66.    Under Florida law, a corporate officer who commits or participates in tortious conduct, whether or not it is also for the benefit of the corporation, is personally liable the third parties injured thereby. Any other rule would allow a corporate officer to perpetrate tortious harm yet escape liability behind the shield of his representative character. Ye bears personal culpability for the misconduct he orchestrated through his corporate entity, jointly and severally with the corporate entity, that is, El Belize.

67.    Defendants' conduct is causing Plaintiff grave damages.

WHEREFORE, Plaintiff seeks temporary and permanent injunctive relief, and damages in an amount to be proven at trial, attorneys' fees and costs, disgorgement of any and all gains, gross profits and advantages derived from Defendants' unlawful activities, and such other relief as the Court deems just and proper.

## COUNT III TORTIOUS INTERFERENCE
### (AGAINST ALL DEFENDANTS)

68.    Plaintiff realleges and incorporates by reference the common allegations as though fully set forth herein.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

69.     EFS has multiple business relationships with various purchasers of lighting and lighting related products.  Many of these relationships are with Florida companies, such as Jademar Lighting, Tamco, Edison Lighting, Beacon Lighting (a division of Hubbell Lighting; NYSE: HUBB), Lite Maintainance and Brownlee Lighting.  The relationships include AZZ (NYSE: AZZ), The Home Depot (NYSE: HD), Cree, Phillips/Signify (OTCMKTS: PHPPY) (and various related entities), Hubbell (NYSE: HUBB), Hawthorne Lighting (NYSE:SMG), and others.

70.     For years, EFS has supplied these customers with products, manufactured with their proprietary tooling, that El Belize and Ye have stolen and continue to unlawfully use.

71.     Defendants, Ye and El Belize knew of EFS's business relationships with these customers.  Defendants have this knowledge, in part, because for years they helped manufacture the products that EFS would then sell to customers and end users. They know, via EFS, the tooling used; the pricing; the shipping terms; the financing terms; and, other proprietary information to develop a successful supplier relationship.

72.     EFS also had existing relationships with suppliers in the People's Republic of China and elsewhere to source and supply products for EFS's business.

73.     El Belize and Ye had knowledge of EFS's relationships with suppliers.

74.     El Belize and Ye have wrongfully, intentionally and unjustifiably interfered in EFS's business relationships with customers and suppliers.

75.     Among other things, El Belize, through Ye and other of its agents, have falsely communicated with EFS's customers about EFS, offering to sell them products tooled on EFS's tooling and machinery with designs developed by the parties, but cutting

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

EFS out of the transaction.  El Belize and Ye continue to solicit business from EFS's customers, to sell them EFS products, behind EFS's back as part of their unfair competition and in breach of the Agreement.  These solicitations include untrue statements about EFS.

76.    El Belize and Ye have also made false and disparaging statements about EFS to suppliers causing suppliers to sever relations with EFS.

77.    Under Florida law, a corporate officer who commits or participates in tortious conduct, whether or not it is also for the benefit of the corporation, is personally liable the third parties injured thereby.  Any other rule would allow a corporate officer to perpetrate tortious harm yet escape liability behind the shield of his representative character. Accordingly, Ye bears personal culpability for the misconduct he orchestrated through his corporate entity, jointly and severally with the corporate entity, that is, El Belize.

78.    EFS has suffered damages as a direct and proximate result of El Belize and Ye's interference.

WHEREFORE, Plaintiff seeks temporary and permanent injunctive relief, and damages in an amount to be proven at trial, disgorgement of any and all gains, profits and advantages derived from Defendants' unlawful activities, and such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

EFS demands trial by jury on all issues so triable.

Dated:   March 10, 2023

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

CASE NO. 21-CV-81386-BER

Respectfully submitted,

COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse One
Miami, Florida  33133
Telephone:  (305) 858-2900
Facsimile:  (305) 858-5261


By:_____s/___Paul J. Schwiep_____
Paul J. Schwiep, FBN 823244
PSchwiep@CoffeyBurlington.com
YVB@CoffeyBurlington.com
service@CoffeyBurlington.com

*Counsel for Eran Financial Services LLC; Shai Levitin; Eran Group Corp.; Eran Logistical Services LLC; and Eran New Product Development LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and served on all counsel of record using CM/ECF, this 10th day of March, 2023.


___s/___Paul J. Schwiep_____